DÍAZ ET AL., PETITIONERS AND APPELLEES, *v.* DÍAZ, CONTESTANT AND APPELLANT.

APPEAL from the District Court of Guayama in an Action for the Administration of Community Property.

No. 2093.—Decided June 24, 1920.

ATTORNEY AND CLIENT—ACTS OF CLIENT—ESTOPPEL.—However censurable may be the action of a judge in calling to his chambers the members of a community, without notice to their counsel, in order to terminate a pending administration and effect the immediate division of the properties, the order appointing a partitioner of the properties will not be set aside on appeal if it was the result of the mutual agreement of the parties, among them the appellant. The mere fact that the rights of counsel were ignored cannot relieve a client from responsibility for his own acts, particularly when it is not shown that the order to which he consented actually prejudiced him.

The facts are stated in the opinion.

Mr. *J. C. Ramos* for the appellant.

Mr. *T. Bernardini* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Enriqueta Díaz y Anés de Calimano, María ·Hortensia Díaz y Molinari, in her own right and as legal representative of her minor children Hortensia Nieves and Antonio de Ar-

güellas y Díaz, María Esperanza Díaz y Molinari, Domingo W. Palés y Anés and Juan Carlos McCormick y Hartmann, on and before May 22, 1915, were co-owners of three properties known as Mercedes, Río Jueyes and Vacas, in the following proportions:

Enriqueta Díaz, María Hortensia Díaz, the children of the last mentioned, and María Esperanza Díaz, each two-ninths.

Domingo W. Palés, one-third of one-ninth, and his children Luisa María, Mercedes, Lucila, Enriqueta and Jesús María Palés, each one-seventh of two-thirds of one-ninth and Juan. Carlos McCormick two-seventh of two-thirds of one-ninth.

Rufina Molinari Sánchez, usufructuary of these properties, as the widow of Ignacio Díaz Joglar, died on July 3, 1914, and her surviving spouse, Cividanes, having refused to deliver the said properties, the above named tenants in common on May 22, 1915, applied for and obtained the appointment of a judicial administrator, who obtained the possession of the properties in question.

On September 22, 1916, the succession of Carlos McCormick acquired the interest of Enriqueta Díaz and was substituted in the stead of said Enriqueta Díaz and of the said Juan Carlos McCormick.

Thereafter, Ramón Pastor Díaz, appellant herein, acquired the two-ninths belonging to the minor children of Hortensia Díaz and was substituted accordingly.

The interest of the succession of J. C. McCormick was transferred to A. Hartmann & Co. on March 9, 1918, and like substitution was made.

On February 13, 1918, Hartmann & Co. also acquired the interest of María Hortensia Díaz, thus substituting the last named.

On March 9, 1919, María Esperanza Díaz exchanged her interest in Mercedes for that of A. Hartmann & Co. in

Vacas and Río Jueyes and on the 13th of the same month Domingo W. Palés exchanged his interest in Mercedes for that of A. Hartmann & Co. in Vacas and Río Jueyes. And A. Hartmann & Co. also sold to María Esperanza Díaz the interest acquired by them from Hortensia Díaz in Vacas and Río Jueyes.

On May 25, 1918, the judicial administrator died and thereupon the various co-owners, with the sole exception of Ramón Pastor Díaz, appellant herein, applied for and obtained the appointment of a temporary administrator.

On January 7, 1919, A. Hartmann & Co. applied for the appointment of a permanent administrator.

On the day following Ramón Pastor Díaz, by his attorney, appeared and set forth the various changes in ownership that had occurred during the course of the administration, resulting in two distinct tenancies in common, to wit, the Mercedes plantation and the other two properties above mentioned; pointed out that the reasons which prompted the interested parties in applying for a judicial administration had ceased to exist, and suggested that these tenancies in common should be governed by the rules and principles designed by the Civil Code to cover such cases; that no permanent judicial administrator should be named and that the temporary administration should cease; or, in the alternative, in the event of a continuation of the judicial administration, then that the said Ramón Pastor Díaz should be named as permanent administrator, he being willing to serve without salary or compensation, to furnish whatever bond might be required and to wind up the said administration within the shortest possible time. This motion was verified by the sworn statement of Ramón Pastor Díaz, who stated therein that he had read the same and that it had been drawn pursuant to his instructions by his attorney.

On the same date the said Ramón Pastor Díaz, by his attorney, in connection with the question of the appointment

of a permanent judicial administrator, in another motion set forth that the acting temporary administrator, proposed by Hartmann & Co. and María Esperanza Díaz for appointment as permanent administrator, was ineligible for the following reasons: (a) because he had not properly administered the properties in his custody; (b) because during his administration he had not discharged his duties; (c) because he was incompetent and had failed generally in the management of his own affairs; (d) because he was a personal enemy of the said Ramón Pastor Díaz, and (e) because on or about July 31, 1918, the said candidate had filed, or caused to be filed, a complaint charging the said Ramón Pastor Díaz with the crime of theft, resulting in an acquittal.

On April 21, 1919, the various co-owners assembled in the office of the district judge pursuant to his request. Thereupon the judge, after stating the object of the meeting to be an exchange of ideas in regard to the tenancy in common, suggested that the administration had been pending too long and that there was no reason why the same should continue if the tenants in common were disposed to terminate the same; that the law authorized the naming of a commissioner to partition the estate on request of the administrator after liquidation of the property in process of administration; that the accounts presented by the administrator showed such liquidation of the estate and no pending debts and therefore that a division and partition of the estate was in order. The judge then asked whether those present were disposed to make a division or whether they preferred that the administration should continue. The record of what then occurred reads as follows:

"McCormick: Your Honor, as to the interest I represent, which, by reason of certain exchanges I have made with some of the other co-owners, is now confined exclusively to the Mercedes property, I wish to say that we have reached a settlement with the other co-owner of the Mercedes property, Pastor Díaz, and it may be stated

that everything has been amicably arranged save a small matter which is still pending settlement, in which connection I take the liberty of naming you arbitrator in case it should be decided to dispose of the case right here.

"Judge: What I want to know is whether you consent to the division of all the property in common.

"Pastor Díaz: It may be said at this time that the property in common is divided into two sections, one belonging to Harry McCormick and to me; this has been amicably arranged and we have agreed upon the division, the only thing pending being the liquidation of the canes, cattle, oxen, cars, etc. What is still in suspense is the common ownership of María Esperanza Díaz, Palés and myself. As to me I am willing that the division should be made immediately; that is all I have to say.

"Isolina Díaz: The same here.

"Judge: Then all the parties are willing that the division of the inheritance should be proceeded with. (To Pastor Díaz) Do any of the other co-owners have an interest in the property divided between you and McCormick or in the property sought to be divided here?

"Pastor Díaz: No, sir, not so far as the Mercedes property is concerned; the other co-owners have no interest in it; it belongs to McCormick and to me exclusively.

"Judge: But it comes within the scope of the administration?

"Pastor: Within the judicial administration; Palés is the judicial administrator.

"Domingo Palés: They have entered into an agreement which they are about to sign, dividing the two parcels which belong to Pastor, the appraisement of the oxen and a few like trivial matters alone being pending. As to the main factor, the division of the land, they have reached an agreement.

"Pastor Díaz: The apportionment of the cane and the proceeds thereof, the settlement of the cane now being ground at the Central Machete, and the partitioning of certain buildings, oxen, horses and buggies alone are pending; as to the land, McCormick and I have already amicably divided the same at A. Hartmann & Co.'s establishment.

"Judge: Has McCormick any interest in the other parts of the property under administration which form no part of the Mercedes property?

"McCormick: At this time, none whatever.

"JUDGE: The court will issue an order requiring the administrator to petition the court for the appointment of a partitioner for the purpose of dividing the property under administration not included in the Mercedes property; that is to say, the property in regard to which Pastor Díaz and McCormick have reached an understanding. Now, I want the co-owners to name me a person whom they consider fit to discharge the office of partitioner for the purpose of dividing the estate in question. Let Pastor Díaz suggest somebody.

"PASTOR DÍAZ: At this moment I can not suggest anyone to you.

"JUDGE: Domingo Palés?

"PALÉS: I suggest Mr. Calimano.

"JUDGE: Mrs. Isolina Díaz?

"ISOLINA DÍAZ: I, too.

"JUDGE: Palés and Isolina Díaz propose to the court that Fernando Calimano be named as commissioner-partitioner; Pastor Díaz reserves to himself the right to suggest to the court to-morrow the name of the person whom he favors as partitioner.

"JUDGE: On this date, the part owners of the property in common being assembled in Judge's Chambers, and all having notified the court that they were willing to proceed to the partition of the estate and prayed for the division thereof, and it appearing from, the accounts that the administration is now in a state of adjustment and therefore ready to be apportioned, the court directs the acting judicial administrator, Domingo Palés, to petition the court within three days to appoint a partitioner for the purpose of dividing and partitioning the property now under judicial administration. Would you be willing to accept the division into as many lots as there are heirs?

"PASTOR DÍAZ: Yes, sir, I am in accord with that.

"JUDGE: In accord with the valuation already made?

"PASTOR DÍAZ: Let a new appraisement be made, for the valuation is very high. A yoke of oxen is not worth $200 at this time; one who needed them greatly might pay $200 and even a little more for them, but the present market value of a yoke of oxen is not $200, so that there should be a new appraisement and an award among the heirs in equal shares."

On April 22nd the temporary administrator requested the appointment of a commissioner with a view to the partition and division of the properties in process of judicial

administration.   Thereupon the court made the following order:

"Whereas the acting judicial administrator has filed with this court a petition for the appointment of a commissioner-partitioner for the purpose of dividing the property under administration and closing out the administration now pending before this court. Whereas the parties have expressed to the court their desire that the division and award of the property be proceeded with forthwith by delivering to each one the portion pertaining to him at law, nine-tenths of the said part-owners having submitted to the court the name of Fernando Calimano, a person who by reason of his integrity and capacity is worthy of the consideration of the court.—Whereas Pastor Díaz has failed to propose a person for the said office, the term allowed him for such purpose having expired, knowing as he did that the other co-owners had proposed the name of Calimano.— Therefore, the court appoints Fernando Calimano commissioner-partitioner of the property owned in common and directs that the commissioner-partitioner shall be placed in possession of all the property belonging to the administration, and authorized to enforce whatsoever right the law may attach to the said office; to effect appraisements, obtain reports from experts, etc. Provided that this court having been informed that a settlement has been reached between the co-owners Pastor Díaz and Harry McCormick, such settlement shall be adhered to as agreed upon by the parties. Said commissioner-partitioner shall file his report within a period of sixty days from the date on which he may be administered the oath of office, unless the court, for good cause, shall allow him further time therefor. Let the parties be duly notified."

On July 11, 1919, Ramón Pastor Díaz, by his attorney, moved to vacate and set aside these two orders and to declare null and void the action taken by the commissioner so named.

The motion recites in substance that the trial judge had called together in chambers the various co-owners without attendance of counsel; that counsel for petitioner had never been notified of the order directing the temporary administrator to apply for the appointment of a commissioner for the division and partition of the common property, but had

just discovered the same on causing the various documents constituting the record in the present case to be assembled and put in order in the clerk's office; that the said order was never entered in the minutes of the court or other books of record; that no notice was received of the motion by the said temporary administrator requesting the appointment of such commissioner and that knowledge thereof had likewise been acquired in the manner above indicated; that counsel had received no notice of the order dated April 24, 1919, naming a commissioner, nor of the fact that the said commissioner had qualified as such until on June 30, 1919, counsel's client was personally notified that on July 3, 1919, the said commissioner would proceed to divide the said property; that the order naming the said commissioner likewise was never entered or recorded in the minutes of the court or other book of record; and that counsel had advised his client, Pastor Díaz Molinari, not to recognize the authority of the said commissioner and not to attend the meeting called by him, for want of jurisdiction in the district court to make such appointment for the purpose indicated. Mention was also made of the previous suggestion that the tenancies in common should be governed by the provisions of the Civil Code, that no permanent administrator should be appointed and that the temporary administration should be closed. Counsel further intimated that the stenographic record of the informal meeting in chambers of the co-owners without the attendance of counsel shows that his client never consented to partition by a commissioner as if an inheritance or succession were involved, said client having said simply that he was willing "that immediate division be made" of all the property held in common, without waiving the point that such division should be effected in accordance with the legal principles established for the government of such cases by the Civil Code. The motion further alleged that by reason of the alleged errors so enumerated the said Pastor Díaz

had been deprived of his property without due process of law, in that the court had given him no opportunity to be heard through counsel before naming a commissioner who had disposed of such property, dividing the same without authority or jurisdiction in the premises.

Pastor Díaz appeals from an order dated July 21st overruling the motion last above mentioned and the assignment of errors covers practically the same ground.

We do not deem it necessary to discuss in detail all of the questions so raised.

The action of the trial judge in summoning the interested parties themselves before him without notice to counsel is sharply criticised in the brief for appellant. In so far as the mere question of procedure is concerned, such conduct involves a flagrant disregard of the rights and privileges of an attorney of record and, to say the least, does not commend itself to our approval. But we are concerned herein not so much with the wounded feeling and just indignation of counsel as with the legal right of the appellant, Pastor Díaz, to insist upon a review of the proceedings in which he so actively participated.

"A client may, at any stage of the case, compromise or dismiss his action or suit, even though his attorney may object. The authority of an attorney being revocable at the pleasure of his client, he can not object to any course the client may choose to take; he does not acquire any vested interest in the cause which is affected by the dismissal of the suit." 6 C. J. 643.

"Ordinarily a litigant may make such disposition of an action pending to which he is a party plaintiff as his wisdom and judgment may dictate, and, if a plaintiff chooses to settle or discontinue an action without the consent of his attorneys, this he has the lawful right to do, and the action should be dismissed on his motion. This rule, it would seem, is but natural justice, and giving to an individual his undoubted right to manage his private affairs according to his own conception of what is the best for his individual interests. A party ought not to be held for increased costs, attorneys' fees, and other expenses incidental to continued litigation against his ex-

pressed will and desire.'' *Idem,* note 13, citing *Williams* v. *Miles,* 89 N. W. 455.

Section 409 of the Civil Code reads as follows:

''The division of a thing held in common may be made by the interested parties or by arbitrators or friendly compromisers appointed at the will of the part-owners.

''In case it is made by arbitrators or friendly compromisors, they shall divide it into parts proportional to the rights of each part-owner, avoiding, as far as possible, 'payments of balances in each.''

And section 413 provides that ''the rules relating to the division of inheritances shall apply to the division amongst part-owners.''

As a general rule either party may revoke a submission to arbitration at any time before an award has been made. But—

''The decided weight of authority is that, where a submission has been made a rule of court, it can not be revoked without leave of court.'' 5 C. J. 54.

. And—

''Where the parties to a suit in equity, after issue joined, and pending a reference to an examiner, file and agreement to submit the controversy to the final decision of arbitrators, and in consequence of such agreement the court, at the request of the parties, vacates the appointment of the examiner, the agreement of reference is virtually made a rule of court, and becomes irrevocable.'' *Idem,* note 26 (*a*), citing White's App. 108 Pa. 473.

Another well-known general rule is that—

''Where a party procures the rendition or entry of a judgment, decree or order, or in responsible for error therein, he is estopped to assert, on appeal or error, that it is erroneous. One who asks and obtains relief can not appeal from the decree granting it because the effect thereof differs from his anticipations.'' 4 C. J. 716.

''Where a party deliberately consents at the trial to the entry of an order, the making of a ruling, the rendition of a judgment,

or the taking of any proceedings incidental to the trial, and such ruling, action or proceeding does not constitute fundamental error, he is estopped to predicate error thereon in the appellate court, especially where the errors were not prejudicial." *Idem*, 717.

It is true, as suggested by counsel for appellant and as we have already intimated, that ordinarily it is the attorney and not the client who waives questions arising during the course of the trial; and, were the matters complained of mere incidents affecting only the conduct of the proceedings, or if any undue advantage had been taken of appellant, or if his full understanding of the situation and of the attitude deliberately assumed by him were not so self-evident, or if any actual prejudice were shown, we might be inclined to take a somewhat different view of the matter. But the facts above outlined show that the object of the meeting held in the chambers of the trial judge as well as the gist of the agreement there reached, was to put an end to the pending administration by an immediate division of the properties involved therein; and that the method adopted was to all practical intents and purposes the naming of an arbitrator or friendly compromisor for the purpose of carrying out that agreement. The manner in which such arbitrator was selected, the name by which he was designated, the circumstance that his report was to be submitted to the court for final approval and the further fact that the procedure so adopted conformed more or less to that prescribed for the division of an inheritance and the winding up of a judicial administration, are not matters of vital importance save in so far as they operated to make the submission virtually a rule of court and therefore irrevocable.

The action of the district judge in taking the initiative without notice to counsel, and suggesting that the whole matter be given this course, however irregular and improper, was cheerfully acquiesced in and acted upon by appellant. Subsequent developments, including the report of the "com-

missioner,'' may have disclosed the unwisdom of such action, but the mere fact that the rights of counsel were ignored can not relieve a client from all responsibility for his own conduct.

Appellant had vigorously opposed the continuance of the judicial administration and had strenuously insisted upon an immediate division of the property. To this extent, at least, the practical result of the action taken by the court was in a general way in line with his demands. Nor can his assent to what was done be restricted within the narrow limits suggested by counsel. We need not repeat here what appears from the stenographic record, *supra,* in order to show that appellant tacitly, if not expressly, consented to all that was done, and that he did this with his eyes open.

The earlier proceedings herein have been several times before this court, and we cordially concur in what seems to be the opinion of all parties concerned, including the trial judge, that some conclusion of the matter is a consummation devoutly to be wished.

It was suggested at the hearing that the appeal should be dismissed without consideration of the merits, and perhaps this would have been proper under the authority of *Ex parte Boerman, ante,* page 76, and *A. Hartmann & Co.* v. *Cividanes, ante,* page 29. But, in view of the peculiar circumstances involved, and the earnestness with which the general aspects of the proceedings had in the court below were pressed upon our attention, and inasmuch as the dismissal of the appeal would be in effect the equivalent of an affirmance, we have elected to examine the record with some care in order to ascertain whether or not appellant himself, as distinguished from counsel, has any just cause for complaint.

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices del Toro and Aldrey concurred.

Mr. Justice Wolf took no part in the decision of this case.